# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

TONY M. GONZALES,  *
                                           *
    Plaintiff,  *
                                           *
vs.  *  Civil Action No. 13-00126-B
                                           *
CAROLYN W. COLVIN,  *
Commissioner of Social Security, *
                                           *
    Defendant.  *

## ORDER

Plaintiff Tony M. Gonzales (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. On April 11, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 26). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I. Procedural History

Plaintiff protectively filed an application for disability

insurance benefits and supplemental security income on May 6, 2010. (Doc. 14 at 1; Tr. 123-33). Plaintiff alleges that he has been disabled since April 10, 2009 because he was born with his feet backwards; he suffers from arthritis, leg pain, and swelling; and he has trouble standing. (Tr. 147). Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Katie H. Pierce (hereinafter "ALJ") on October 12, 2012. Plaintiff, his attorney, and a vocational expert (hereinafter "VE") attended the hearing. (Id. at 24). On February 7, 2012, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 6-19). The Appeals Council denied Plaintiff's request for review on February 7, 2013. (Id. at 1-3). Thus, the ALJ's decision dated February 7, 2012 became the final decision of the Commissioner. The parties waived oral argument (Docs. 25, 26), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issue on Appeal

**Whether the ALJ erred in failing to assign controlling weight to the opinion of Plaintiff's treating physician.**

## III. Factual Background

Plaintiff was born on September 28, 1969, and was 42 years of age at the time of his administrative hearing on October 12,

2

2011. (Tr. 29). Plaintiff testified at the hearing that has a fourth grade education and does not have a GED. (Id.). According to Plaintiff, he last worked in a prep kitchen with All States Employer. (Id.). Plaintiff testified that he was born crippled and his legs were put in braces while his bones were still soft. (Id. at 30). He further testified that over the years, he has gotten "worse and worse inside [his] bones and through [his] knees", and that in September 2011, a doctor recommended that he have surgery to "reset" his shins; however, he did not have insurance to cover the procedure. (Id. at 30, 33). He also testified that he takes Flexeril and anti-inflammatory medications, which help relieve the swelling and muscle spasms that he experiences. (Id.). Additionally, Plaintiff testified that his left shoulder has been dislocated several times, that doctors told him that he has impingement in his shoulder and arthritis around the bones, that doctors recommended surgery on his shoulder, and that he was not able to afford the surgery. (Id. at 30-31). Plaintiff also contends that two of his fingers on his right hand were cut off years ago and that although they were sewn back to his hand, "[t]hey're just dead." (Id.).

On Plaintiff's function report, he reported that his daily activities include watching television, washing dishes, and cooking. (Id. at 152). He further reported that he has no

3

limitations with regard to his personal care, that he prepares sandwiches, frozen dinners, and canned foods, that he goes outside, watches sports, and plays cards "as much as possible," that he goes shopping for food, and that he attends church weekly. (Id. at 153-56). Plaintiff also reported that he is able to lift up to 30 pounds and walk one block before needing to rest. (Id. at 157).

In her decision, the ALJ made the following relevant findings:

> The claimant has the following severe impairments: bilateral patellofemoral syndrome, arthropathy, generalized osteoarthritis, and adjustment disorder with depressed mood (20 CFR 404.1520(c) and 416.920).[1]

(Id. at 11). With respect to Plaintiff's RFC, the ALJ stated as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is able to occasionally push/pull leg controls, occasionally push/pull arm controls with the left upper extremity; occasionally reach overhead; never lift and carry overhead; occasionally stoop, kneel, crouch, balance, and climb stairs and ramps; never crawl; and never climb ladders, ropes, or scaffolds. The claimant can perform simple,

---

[1] The ALJ also determined that Plaintiff has not engaged in substantial gainful activity since April 10, 2009, and that he does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11-12).

4

> routine, repetitive tasks; adapt to minimal changes in the work setting; frequently interact with co-workers, supervisors, and the public; and maintain attention and concentration up to two hours at a time.
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expect to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Id. at 14-15).

In her decision, the ALJ also outlined Plaintiff's medical history as follows:

> The claimant's treating source medical records show that he began receiving treatment at the Mobile County Department of Health in June 2010. At that time, he reported that he was born "crippled" with his feet backwards. No surgery was performed, but he did wear braces until age 5 when his mother took them off, and he learned to walk with a limp. The claimant complained of unbearable pain from his knees to ankles and feet, as well as in his shoulders and back. The claimant also reported that his hands and face were burned with antifreeze in a mechanic shop a few months prior. His face was noted to be healed, and his hands were noted to be discolored and healing. Physical examination showed

5

that the claimant was in no acute distress, and he had tenderness to palpation of the legs and knees bilaterally. He was diagnosed with knee joint pain and ankle point pain. The claimant was prescribed Ibuprofen and x-rays were ordered.

X-rays of the ankle were normal; x-rays of the right foot showed mild narrowing of the first metatarsophalangeal joint; x-rays of the bilateral lower leg were normal; x-rays of the bilateral knees were normal; and x-rays of the bilateral hips were normal. The claimant returned to the Health Department in July 2010 for follow up and Dr. Sherman noted that x-rays were essentially normal. He diagnosed claimant with arthropathy, backache, and knee joint pain and added Darvocet to the claimant's medication list. . . .

The claimant returned for a follow up in November 2010 with additional complaints of finger joint pain and swelling. Dr. Sherman discontinued the Darvocet and noted that the claimant had an atypical reaction. Physical examination of the shoulders and knees showed no abnormalities. Dr. Sherman diagnosed the claimant with subluxation of the left shoulder and congenital foot deformity and added the Naprosyn to the claimant's medications. . . .

The claimant returned for treatment in April 2011 with complaints of constant pain from arthritis with localized joint stiffness, which was worse in the mornings. The claimant was again noted to be in no acute distress in spite of the fact that he reported his pain level as 10 out of 10. Physical examination showed no abnormalities of the spine, no abnormalities of the hips, and no abnormalities of the knees. The claimant had tenderness to palpation of the first toe of the right foot. The claimant was diagnosed with the arthropathy and generalized osteoarthritis. His medications were changed to Mobic and Flexeril. When the claimant returned for follow up in May 2011, he saw Mark A. Pita, M.D., for the first time. Dr. Pita noted that the claimant reported improvement with his new medications and that his pain level was only 4 out of 10. Physical examination showed only pain with

6

passive movement of the bilateral knees. The claimant's Mobic and Flexeril were continued and x-rays were ordered. X-rays of the right foot again showed mild narrowing of the first metatarsophalangeal joint and x-rays of the left shoulder showed large marginal osteophyte along the humeral head. X-rays of the ribs and hips were normal. . . . Dr. Meyer [2] completed a clinical assessment of pain form in which he opined that the claimant had pain that would distract him [from] adequately performing daily activities and work and that physical activity would increase the claimant's pain and cause distraction from task or total abandonment of tasks. He opined that the claimant's pain would result in some limitations but not to a degree as to cause serious problems at work. He listed specific restrictions to the claimant's daily activities as limited ability to walk and carry heavy weights. . . .

Later in May 2011, the claimant presented to Dr. Meyer, a board certified orthopedic surgeon, at the Stanton Road Clinic. The claimant reported his gradual onset joint pain, including bilateral knee pain, left shoulder pain, and rib pain. Physical examination revealed decreased range of motion in the knees bilaterally with no crepitus. There was laxity to varus and valgus stress but negative McMurray and Lachman's test bilaterally. X-rays of the knees showed no acute fracture dislocations, but there was evidence of mild joint space narrowing. Dr. Meyer diagnosed the claimant with bilateral patellofemoral syndrome and noted that the claimant had significantly weak quadriceps bilaterally. He suggested that the claimant strengthen these muscles and he prescribed Ultram. . . . The claimant returned to Dr. Meyer in September 2011 with complaints of left upper extremity pain and bilateral shin pain. Physical examination showed full range of motion in the

---

[2] While the ALJ lists Dr. Meyer as the physician who completed Plaintiff's Clinical Assessment of Pain, the record reflects that the questionnaire was actually completed by Dr. Pita during Plaintiff's first visit with Dr. Pita on May 9, 2011. (Tr. 248-49).

7

knees and what appeared to be tibial torsion with intoeing bilaterally of the lower extremities. He diagnosed the claimant with bilateral tibial pain and noted that if the claimant received medical insurance, he could possibly undergo evaluation for any surgical indication that could be addressed to alleviate his pain of the lower extremities and improve function. . . .

In addition to these treatment notes, there is also medical evidence from a consultative examination performed in August 2010 by Michael C. Madden, M.D. Dr. Madden noted that the claimant reported his daily activities as walking during the day and light chores. Physical examination showed that the claimant was in no apparent distress. His back was non-tender and a straight leg raising was negative. He did have some left hip tenderness and a slight limp. When squatting, the claimant was only able to bend his knees 90 degrees, and he had decreased range of motion in his left shoulder. Dr. Madden diagnosed the claimant with left hip pain, bilateral knee pain, and left shoulder pain. He opined that the claimant would be able to perform normal duty work activities such as sitting, standing, hearing, and speaking, with a decreased capacity for walking and lifting and carrying heavy objects. . . .

(Id. at 15-16).

The ALJ also discussed the weight she assigned to medical evidence of record and explained as follows:

> The medical evidence supports a finding that the claimant will be capable of performing a reduced range of sedentary work. Moderate weight is given to the pain form completed by Dr. Pita, which limited the claimant's ability to walk and carry heavy weight, but did not preclude the claimant's ability to perform previous work. This form is persuasive but not entitled to controlling weight because Dr. Pita indicated that the form was completed on his initial visit with the claimant and thus, he is not considered a treating source. Furthermore, the undersigned notes that his

8

>     assessment regarding the level of distraction
>     caused by the claimant's pain is not consistent
>     with his statement that the claimant's pain would
>     not result in limitations to a degree that would
>     cause serious problems at work. Great weight is
>     given to Dr. Madden's opinion. . . that the
>     claimant would be able to perform normal duty work
>     with limitations in the ability to walk and carry
>     heavy objects. It is consistent with the objective
>     medical evidence of weakened quadriceps, mild right
>     toe joint narrowing, and mild knee joint narrowing,
>     and with treating source notes. The occasional
>     pushing and pulling limitations of the lower
>     extremities and the occasional posture limitations
>     are consistent with the findings of Dr. Meyer. . .,
>     and the essentially normal x-rays, as well as the
>     findings of Dr. Madden. The limitations on reaching
>     overhead and occasional pushing and pulling with
>     the left upper extremity is supported by the
>     shoulder x-ray. . ., which shows a large marginal
>     osteophyte, and is supported by the decreased range
>     of motion as evidenced [by Dr. Madden's findings].

(Id. at 17).

Finally, utilizing the testimony of the VE, the ALJ concluded that Plaintiff is not capable of performing his past work as a street sweeper. (Id. at 18). Consistent with the VE's testimony, the ALJ concluded that considering Plaintiff's residual functional capacity for a reduced range of sedentary work, as well as his age, education, and work experience, there are other jobs existing in the national economy that Plaintiff is able to perform, such as assembler, call out operator, and surveillance system monitor. (Id. at 18-19). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 19).

**IV. Analysis**

**A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

**B. Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R.

---

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir.

§§ 404.1520, 416.920.

In this case, Plaintiff argues that the ALJ committed reversible error by failing to assign controlling weight to the opinion of Dr. Pita, as set forth in the Clinical Assessment of Pain form dated May 9, 2011. (Doc. 11 at 6-12). Defendant contends that the ALJ properly articulated valid reasons for assigning moderate weight to Dr. Pita's opinion and that the ALJ's RFC assessment is supported by substantial evidence. (Doc. 20 at 9-11). The Court agrees with Defendant that Plaintiff's claim is without merit.

"It is well-established that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (citations and internal quotations omitted). The ALJ may discount the treating physician's report where it is not accompanied by objective medical evidence, is wholly conclusory, or is contradicted by the physician's own record or other objective medical evidence. Id.; see also Green, 223 Fed. Appx. at 922-23 (ALJ had good cause to devalue a treating physician's

---

1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); see also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

opinion where it was inconsistent with the objective medical evidence, as well as the plaintiff's testimony). "When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the: (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion." Weekley v. Commissioner of Soc. Sec., 486 Fed. Appx. 806, 808 (11th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(c)). When an ALJ articulates specific reasons for declining to give a treating physician's opinion controlling weight, and the reasons are supported by substantial evidence, there is no reversible error. See Forrester v. Commissioner of Social Sec., 455 Fed. Appx. 899, 902 (11th Cir. 2012) (unpublished) ("We have held that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradict the opinion."). Indeed, an ALJ "may reject any medical opinion, if the evidence supports a contrary finding." Id., 455 Fed. Appx. at 901. Although the ALJ must evaluate the treating physician's opinion "in light of the other evidence presented," "the ultimate

determination of disability is reserved for the ALJ." Green, 223 Fed. Appx. at 923 (citing 20 C.F.R. §§ 404.1513, 404.1527, 404.1545).

In the instant case, the ALJ articulated valid reasons for assigning moderate weight to the opinions expressed by Dr. Pita in the Clinical Assessment of Pain form which he completed on May 9, 2011. The record reflects that Plaintiff was treated at the Mobile County Department of Health beginning in July 2010. (Tr. 199). It appears that early on, Plaintiff was treated by Dr. Sherman and various physician assistants on staff. (Id. at 199-216). On May 9, 2011, Plaintiff was treated at the Mobile County Department of Health by Dr. Pita. (Id. at 248-49). Dr. Pita evaluated Plaintiff and completed the Clinical Assessment of Pain form. During the visit, Plaintiff reported that his pain was a 4 out of 10 on a scale of 1 to 10, and that his medications, which were prescribed by Dr. Sherman in April 2011, were successfully helping to control his pain. (Id. at 250). Dr. Pita's physical examination revealed that Plaintiff had pain with passive movement of the bilateral knees but no back pain, neck pain, or other musculoskeletal pain. (Id.). On the pain form, Dr. Pita opined that Plaintiff's pain would "distract [him] from adequately performing daily activities or work," that physical activity would "greatly increase [his] pain and cause distraction from task or total abandonment of task," and that

Plaintiff had limited ability to walk or carry heavy weights. (Id. at 148-49). Dr. Pita further opined that despite Plaintiff's pain, he would be able to perform his previous work, as "limitations may be present but not to a degree as to cause serious problems at work." (Id. at 149).

As required by the Regulations, the ALJ gave due consideration to Dr. Pita's opinions and clearly articulated the reasons for assigning only moderate weight to the opinions that Dr. Pita expressed in the Clinical Assessment of Pain form. Indeed, the ALJ referenced the fact that this was the only occasion during which Dr. Pita had treated Plaintiff, as well as the fact that the pain form contained internal inconsistencies. (Id. at 17). The undersigned notes that while the record does not reflect that Dr. Pita had treated Plaintiff before, one would assume that he had the benefit of Dr. Sherman's treatment notes since Plaintiff was treated by both Dr. Sherman and Dr. Pita through the Mobile County Department of Health. (Id. at 199-216, 250-65). Thus, it is questionable whether the lack of a treatment relationship, standing alone, would have been a sufficient basis for according Dr. Pita's opinions only moderate weight. However, as correctly found by the ALJ, the opinions expressed by Dr. Pita were internally inconsistent and were not consistent with some of his own findings during his examination of Plaintiff.

15

As noted supra, on the Clinical Assessment of Pain form, Dr. Pita opined that Plaintiff's pain would "distract [him] from adequately performing daily activities or work," that physical activity would "greatly increase [his] pain and cause distraction from task or total abandonment of task," and that Plaintiff was limited in his ability to walk or carry heavy weights; yet, Dr. Pita also opined that notwithstanding Plaintiff's pain and limitations, he could perform his previous work with no serious problems. (Id. at 148-49). As found by the ALJ, Dr. Pita's findings regarding the severity of Plaintiff's pain are simply not consistent with his finding that Plaintiff's pain would not seriously limit his ability to work. (Id.). Moreover, Dr. Pita's findings regarding the severity of Plaintiff's pain are not consistent with his treatment notes which reflect that on May 9, 2011, Plaintiff reported his pain at a level 4, and further reported that his medication was helping to relieve his pain. Thus, the ALJ did not err in limiting the weight she accorded to Dr. Pita's opinions.

Additionally, substantial record evidence supports the ALJ's finding that Plaintiff is not disabled. As explained *supra*, Dr. Pita opined that Plaintiff had limited ability to walk or carry heavy weights and that his pain may cause limitations at work but not to a degree to cause serious problems at work. Additionally, upon Dr. Madden's consultative

16

examination of Plaintiff, he found that Plaintiff suffered from left hip pain, bilateral knee pain, and left shoulder pain, that Plaintiff had a "somewhat" decreased capacity for walking and lifting, carrying, and handling heavy objects, secondary to his left hip and shoulder pain, and that Plaintiff's ability to engage in work-related activities such as sitting, standing, speaking, and traveling appeared to be adequate for normal-duty work. (Id. at 240). The ALJ's RFC assessment for a reduced range of sedentary work with specific exertional limitations clearly took into account the limitations noted by both Dr. Pita and Dr. Madden. As noted, the ALJ specifically found that Plaintiff could "occasionally push/pull leg controls, occasionally push/pull arm controls with the left upper extremity; occasionally reach overhead; never lift and carry overhead; occasionally stoop, kneel, crouch, balance, and climb stairs and ramps; never crawl; and never climb ladders, ropes, or scaffolds." These RFC restrictions accommodated Plaintiff's knee, hip, and left shoulder pain and are consistent with the limitations noted by Dr. Pita and Dr. Madden.

When presented with Plaintiff's RFC for a reduced range of sedentary work, as well as his age, education and work experience, the VE testified that Plaintiff can perform the jobs of assembler, call out operator, and surveillance system monitor. (Id. at 35). Plaintiff has not challenged the ALJ's

17

RFC assessment of a reduced range of sedentary work or her finding that there are other jobs in the national economy that he can perform with the RFC.  Because the ALJ's findings are supported by substantial evidence of record, the Court affirms the ALJ's decision denying Plaintiff's request for benefits.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a disability insurance benefits and supplemental security income be **AFFIRMED**.

**DONE** this **24th** day of **September, 2014.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**